IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| HANNAH JESSKI, as Executrix and Personal Representative of the Estate of Dixie Blazier; GLENDA MUNDIS and ROBERT MUNDIS,<br><br>        Plaintiffs,<br><br>vs.<br><br>DAKOTA, MINNESOTA & EASTERN RAILROAD CORPORATION and CANADIAN PACIFIC RAILWAY COMPANY,<br><br>        Defendants.<br>_____<br>DAKOTA, MINNESOTA & EASTERN RAILROAD CORPORATION,<br><br>        Third Party Plaintiff,<br><br>vs.<br><br>CARLA J. SIPE, as Executrix and Personal Representative of the Estate of James D. Blazier,<br><br>        Third Party Defendant. | No. 19-CV-2070-CJW-MAR<br><br>**ORDER** |

This matter is before the Court on defendant Canadian Pacific Railway Company's ("CPRC") Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 41). Plaintiffs filed a timely resistance to defendant's motion, and in the alternative requested the Court approve their request for jurisdictional discovery. (Doc. 45). CPRC timely replied to

plaintiffs' resistance. (Doc. 46). The parties did not request oral argument, and the Court considers this matter fully submitted.

For the reasons set forth below, CPRC's motion is **granted**, and plaintiffs' request for jurisdictional discovery is **denied**.

## I. FACTUAL BACKGROUND[1]

On December 1, 2017, a locomotive marked with the letters "CP" collided with a vehicle at railway crossing 385-463L near Nora Springs, Iowa, resulting in the deaths of the vehicle's driver and front-seat passenger, and injury of the back-seat passenger. (Doc. 45-2, at 2-3). Decedent James Blazier ("Mr. Blazier") was the driver. (*Id.*). Decedent Dixie Blazier ("Ms. Blazier"), wife of Mr. Blazier, was the front seat passenger. (*Id.*). Plaintiff Glenda Mundis ("Ms. Mundis"), sister of Ms. Blazier, was the back-seat passenger. (Doc. 25, at 2). Plaintiff Robert Mundis ("Mr. Mundis") is the husband of Ms. Mundis. (*Id.*, at 19). Plaintiff Hannah Jesski ("Ms. Jesski") is the daughter of Ms. Blazier and the Administratrix of Ms. Blazier's estate. (*Id.*, at 2). Engineer Mel Fransdal and assistant engineer Jared Ball were operating the locomotive. (*Id.*, at 4). Plaintiffs allege Fransdal and Ball were under the direction and control of defendants Dakota, Minnesota & Eastern Railroad Corporation ("DM&E") and/or CPRC at the time of the incident. (*Id.*). CPRC denies any involvement in the incident at issue. (Doc. 41-1, at 4). The Court will discuss additional facts below as they become relevant to the Court's analysis.

## II. PROCEDURAL HISTORY

On February 20, 2020, plaintiffs filed their Second Amended Complaint and jury demand for their wrongful death and negligence claims. (Doc. 25). The complaint

---

[1] The Court bases its factual findings on plaintiffs' complaint and the parties' affidavits and exhibits, drawing all inferences and resolving all factual conflicts in favor of plaintiffs. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011).

consists of two counts of negligence and one count of loss of consortium against each defendant DM&E and CPRC, for a total of six counts. (*Id.*, at 8-20). On March 17, 2020, CPRC filed a motion to dismiss CPRC as a defendant for lack of personal jurisdiction.[2] (Doc. 41). Plaintiffs filed a resistance to CPRC's motion to dismiss on March 31, 2020. (Doc. 45). CPRC filed a reply in support of its motion to dismiss on April 7, 2020. (Doc. 46).

### III. ANALYSIS

#### A. *Personal Jurisdiction*

##### 1. *Applicable Law*

A court must have personal jurisdiction over the parties before it can resolve a case. *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). A defendant can raise a court's lack of personal jurisdiction by pre-answer motion. FED. R. CIV. P. 12(b)(2). The plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendant. *K-V Pharm.*, 648 F.3d at 591. Courts consider the pleadings as well as affidavits and exhibits in determining if a plaintiff has made a prima facie showing of personal jurisdiction. *Id.* at 591-92. "The evidentiary showing required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (alteration omitted) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)). The "prima facie showing," however, "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir. 1974). Plaintiffs have the burden of offering sufficient facts to support a reasonable inference that a defendant can be subjected to the Court's jurisdiction in the forum state. *Id.* at 259. In ruling on a motion to dismiss for lack of personal jurisdiction courts "must

---

[2] This motion pertains to CPRC only. DM&E has not challenged this Court's personal jurisdiction.

3

view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm.*, 648 F.3d at 592.

For a district court to properly assert jurisdiction over a nonresident defendant the court "must determine [if] personal jurisdiction exists under the forum state's long-arm statute and [if] the exercise of personal jurisdiction is consistent with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). Iowa's long-arm statute authorizes personal jurisdiction to the fullest extent allowed by the United States Constitution, so the Court need only analyze whether exercising personal jurisdiction comports with due process. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). "Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Id.*, at 980 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). Once a plaintiff has established that the defendant has minimum contacts with the forum state, the court must consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Creative Calling Sols.*, 799 F.3d at 981-82 ("Even where a party has minimum contacts with a forum, jurisdiction can still be unreasonable. The Due Process Clause forbids the exercise of personal jurisdiction under circumstances that would offend traditional notions of fair play and substantial justice." (citations and internal quotation marks omitted)).

The Eighth Circuit Court of Appeals has adopted a five-factor test to determine if a defendant has sufficient minimum contacts with the forum state and whether the exercise of personal jurisdiction comports with due process. *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020). The five factors are: "(1) the nature and quality of contacts with

4

the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.* (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)) (internal quotation marks omitted). The first two factors of the test address the minimum contacts portion of the personal jurisdictional analysis. *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1018 (D. Minn. 2008). The third factor differentiates between specific and general jurisdiction. *Burlington*, 97 F.3d at 1102. The fourth and fifth factors address other considerations, in addition to minimum contacts, that affect the reasonableness of a court exercising personal jurisdiction. *See Pope*, 588 F. Supp. 2d at 1018. "The fourth and fifth factors 'carry less weight and are not dispositive.'" *Whaley*, 946 F.3d at 452 (quoting *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014)).

"General jurisdiction," which allows the court to hear any claim against the defendant, exists when the defendant has "continuous and systematic" contacts with the forum state which render the defendant "essentially at home in the forum state." *Creative Calling Sols., Inc.*, 799 F.3d at 979 (quoting *Daimler AF v. Bauman*, 571 U.S. 117, 127 (2014)). Thus, when a court has general personal jurisdiction over the defendant it need not assess personal jurisdiction as to each claim. Here, plaintiffs concede this Court lacks general jurisdiction over CPRC, so the Court will not analyze whether it has general jurisdiction over CPRC. (Doc. 45-2, at 4 n.3).

Instead, plaintiffs assert that this Court has "specific jurisdiction" over defendants. (*Id.*, at 5). "'Specific jurisdiction,' . . . is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling Sols.*, 799 F.3d at 979-80. "Because [the specific jurisdiction] analysis depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir.

5

2007); *see also Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 93 n.4 (10th Cir. 2012); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999); 16 MOORE'S FEDERAL PRACTICE – CIVIL § 108.42[1] (3d ed. 2019) ("Several circuits have taken the view that the determination of specific personal jurisdiction is a claim-specific inquiry."). Similarly, "each defendant's contacts with the forum must be assessed individually." *Select Comfort Corp. v. Kittaneh*, 161 F. Supp. 3d 724, 731 (D. Minn. 2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)). Because corporations are legal fictions, their contacts with the forum are determined based on the acts of the corporation's representatives within the scope of their relationship with the corporation. *Int'l Shoe*, 326 U.S. at 316; *see also* 16 MOORE'S FEDERAL PRACTICE – CIVIL § 108.42[3][b][ii] (2020) ("Whether a corporation has made contacts justifying the exercise of personal jurisdiction is, in reality, a question of whether the contacts made by the agents and employees of the corporation are sufficient to justify the exercise of jurisdiction. If so, these acts of the corporation's agents and employees will be attributed to the corporation for jurisdictional purposes, so long as the acts were within the course and scope of the agency or employment.").

The Court will analyze whether it has specific personal jurisdiction over CPRC on plaintiffs' tort claims, including plaintiffs' negligence and loss of consortium claims.

### 2. *Application to Plaintiffs' Claims*

In assessing personal jurisdiction over tort claims, the Eighth Circuit Court of Appeals applies the five-factor test for jurisdiction. The first factor of the five-factor test, which addresses the nature and quality of the defendant's contacts with the forum state, differentiates between "random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction," *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011), and purposeful contacts with the forum

6

that justify personal jurisdiction, *see Rural Media Grp., Inc. v. Performance One Media, LLC,* 697 F. Supp. 2d 1097, 1111 (D. Neb. 2010).

Plaintiffs make the following specific claims about CPRC's contact with Iowa in their brief in opposition to CPRC's motion to dismiss:

> (i) Canadian Pacific operates hundreds of miles to track in Iowa; (ii) Canadian Pacific employs hundreds of employees in Iowa; (iii) Canadian Pacific received tax benefits due to Iowa's state tax rates; (iv) Canadian Pacific has two (2) "main rail yards" located in Iowa; (v) Canadian Pacific transports different commodities to and from Iowa; (vi) Canadian Pacific seeks approval from the FRA to modify signaling systems at railroad crossings in Iowa; (vii) a Canadian Pacific locomotive was involved in the accident that resulted in Mrs. Blazier's death and Mrs. Mundis' catastrophic injuries; (viii) Canadian Pacific submitted an accident report to the FRA; (ix) Canadian Pacific conducted its own internal investigation into the accident; (x) the individuals who conducted Canadian Pacific's investigation identify themselves as Canadian Pacific employees and have Canadian Pacific work email addresses.

(Doc. 45-2, at 16). In support of these allegations, plaintiffs also point to language from DM&E's Answer, an image of CPRC's accident report to the FRA, images showing a "CP" logo, Iowa or Minnesota addresses, email signatures with "@cpr.ca" on communications from employees plaintiffs allege are employees of CPRC, and excerpts from a 2018 Canadian Pacific Annual Report. (Doc. 45-2, at 5-14). Plaintiffs' arguments for jurisdiction fall into three general categories: (1) CPRC owned, controlled, and operated the locomotive involved in the incident and the railroad crossing at which the incident occurred, (2) CPRC maintains operations and employees in Iowa, and (3) CPRC submitted a report relating to the incident to the Federal Railroad Administration ("FRA"). (Doc. 45-2, at 5-14). The Court will address each of these categories in turn.

### *a. Ownership of Locomotive Involved in Incident*

Plaintiffs cite portions of DM&E's Answer as proof that CPRC owned the locomotive involved in the incident. Specifically, plaintiffs point to the portion of

7

DM&E's Answer in which DM&E admits plaintiffs' allegation that "the Canadian Pacific locomotive was being operated by Engineer Mel Fransdal and Assistant Engineer Jared Ball." (Docs. 45-2, at 6; 31, at 6). DM&E's answer is not a binding admission for two reasons. First, defendant cannot be bound by DM&E's admissions because they are separate parties. Admissions are only binding on the party making the admission, and thus cannot bind another party. *See Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990) (stating that "admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions"); *Keller v. United States*, 58 F.3d 1194, 1199 (7th Cir. 1995) (stating that admissions "are binding upon the party making them."); *Mays v. Dir., Off. of Workers' Com. Programs*, 938 F.3d 637, 647 (5th Cir. 2019) (stating that an admission "is binding on the party making them"). Thus, DM&E's admission in its answer cannot, as a matter of law, bind CPRC.

Second, even if DM&E's answer could bind defendant CPRC, DM&E's answer does not qualify as a judicial admission, at least as applied to defendant CPRC. Statements contained in pleadings can be binding as "judicial admissions." *In re Crawford*, 274 B.R. 798, 804–805 (B.A.P. 8th Cir. 2002). "A judicial admission must be deliberate, clear, and unambiguous, and [plaintiff]'s use of the phrase 'and/or' in its complaint renders [defendant]'s subsequent concession anything but." *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 625 (8th Cir. 2014). In the Second Amended Complaint, plaintiffs define the term "Canadian Pacific locomotive" to mean "the DM&E and/or Canadian Pacific locomotive." (Doc. 25, at 4). As such, DM&E's admission was that "the [DM&E and/or Canadian Pacific locomotive] was being operated by [the employees]" (Doc. 31, at 6), is not a deliberate, clear, and unambiguous admission that CPRC owned the locomotive involved in the incident.

### b. *CPRC's Employees or Operations in Iowa*

A common flaw in plaintiffs' arguments lies in their failure to refute the facts presented by CPRC that the terms "CP," "CPR," and "Canadian Pacific Railway," refer not only to CPRC, but also to affiliate railroads which are separate legal entities. (Doc. 46, at 2-3). CPRC asserts that DM&E, not CPRC, owned the locomotive. (Doc. 41-1, 8). CPRC supports this claim in part with affidavits of two employees. (Docs. 41-2, 41-3). Plaintiffs do not contest these affidavits.

Plaintiffs also do not point to any facts disputing CPRC's description of its corporate structure. In the absence of such facts, the Court cannot draw a reasonable inference that the use of the "CP" or "Canada Pacific Railway" logos or an "@cpr.ca" email address links CPRC to the locomotive, railway crossing, or employees located in the Midwest. Similarly, plaintiffs fail to provide evidence showing the 2018 Canadian Pacific Annual Report refers only to CPRC. To the contrary, the report states that the term "CP" used throughout the report refers to Canadian Pacific Railway Limited ("CPRL"), a parent company of both CPRC and DM&E, and not specifically CPRC. (Doc. 46-1, at 5-6). Because the record establishes that separate legal entities also use the designations of "CP," "CPR," and "Canadian Pacific Railway," the Court cannot draw a reasonable inference from the portions of the annual report plaintiffs cite.

### c. *The FRA Report*

The Court cannot consider the FRA Report as evidence of CPRC's connection to the incident. CPRC is correct in its claim that the FRA Accident/Incident Report ("FRA Report") is inadmissible as evidence and may not be used for any purpose in a suit relating to the matter mentioned in the report. *See Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 185-86 (3d Cir. 2013) (finding that a district court properly excluded the incident report relating to the plaintiff's accident at issue, but improperly excluded reports relating to matters arising from accidents other than the accident at issue). *See also Villa v.*

9

*Burlington N. & Santa Fe Ry.*, 397 F.3d 1041, 1047 (8th Cir. 2005) (stating that "Section 20903 limits the evidentiary privilege to 'accident or incident reports filed by a railroad carrier' under section 20901" but declining to extend that evidentiary protection to forms other than reports filed with the FRA). Even if the Court were to consider the FRA Report as evidence, the result would be the same. CPRC has explained that "the FRA granted CPRC the ability to make consolidated reports for . . . its indirectly-owned U.S. subsidiaries." (Doc. 46, at 5). CPRC has supported this explanation with the affidavit of an FRA employee confirming it. (Doc. 46-2, at 2). Plaintiffs have not presented any facts contradicting CPRC's explanation and evidence. As such, the Court cannot draw a reasonable inference from the FRA Report that CPRC owns or controls the railroad crossing or locomotive.

### d. Conclusion Regarding Personal Jurisdiction

Plaintiffs have failed to provide any evidence connecting CPRC to either the incident or the forum state of Iowa. Instead, all plaintiffs have established is that DM&E, a subsidiary of CPRC, operates in Iowa and was involved in the incident. (Doc. 31, at 5). "The general rule is that a parent corporation that owns a subsidiary—even wholly owns a subsidiary—is not present in a state merely because the subsidiary is there." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 650 (8th Cir. 2003). To place CPRC in the forum state of Iowa because of DM&E's activities in Iowa, plaintiffs must show that DM&E "is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." *Fisher v. First Nat'l Bank*, 338 F. Supp. 525, 529 (S.D. Iowa 1972). Plaintiffs here have not raised this argument, nor have they alleged facts that could support such an argument.

Because plaintiffs have not established that CPRC has any contacts with the state of Iowa that justify personal jurisdiction, this Court does not have personal jurisdiction and need not address the remaining factors. CPRC's Motion to Dismiss is **granted**.

10

### B. Jurisdictional Discovery

"Jurisdictional discovery is warranted only 'if the facts necessary to resolve the jurisdictional inquiry are either unknown or can be genuinely disputed.'" *TrueNorth Companies, L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 423 F. Supp. 3d 604, 615 (N.D. Iowa 2019) (quoting *F.D.I.C. v. Dosland*, 50 F. Supp. 3d 1070, 1077 (N.D. Iowa 2014)). Plaintiffs do not specify what information they seek in jurisdictional discovery, only that they seek "to resolve any factual issues." (Doc. 45-2, at 17). As a general rule, "[t]here is no requirement that jurisdictional discovery be permitted where a plaintiff merely suspects supportive facts might be revealed." *Goellner-Grant v. Platinum Equity LLC*, 341 F. Supp. 3d 1022, 1030 (E.D. Mo. 2018). Also, jurisdictional discovery is not warranted where the discovery is taken merely to "test the veracity" of the affidavits submitted by the defendant. *See Regenexx, LLC v. Regenex Health LLC*, No. 4:19-cv-00119-SMR-SBJ, 2020 WL 1269790, at *3 n.2 (S.D. Iowa Mar. 17, 2020).

Plaintiffs have not pointed to any facts that are unknown or genuinely disputed. Defendant's evidence and affidavits explain why defendant has no contacts with Iowa, and plaintiffs are not entitled to jurisdictional discovery to test the veracity of defendant's affidavits. Plaintiffs are not entitled to jurisdiction discovery to "resolve any factual issues" because this request amounts to nothing more than a suspicion that supportive facts may be revealed. Plaintiffs' request for jurisdictional discovery is **denied.**

## IV. CONCLUSION

Defendant Canadian Pacific Railway Company's Motion to Dismiss for Lack of Personal Jurisdiction is **granted**. Plaintiffs' request for jurisdictional discovery is **denied**.

**IT IS SO ORDERED** this 10th day of July, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa